06-4757-cv (L)
Hirt v. The Equitable, Bryerton v. Verizon

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2007

(Argued in Tandem:  April 22, 2008                    Decided: July 9, 2008)

Docket No. 06-4757-cv (L)
Docket No. 06-5190-cv (XAP)
Docket No. 07-1680-cv

_____

STEFANIE HIRT, BARBARA SEAY, ANN NUSSBAUM, SUSAN CHWAST and LORETTA RONZCA,

*Plaintiffs-Appellants-Cross-Appellees*,

—v.—

THE EQUITABLE RETIREMENT PLAN FOR EMPLOYEES, MANAGERS AND AGENTS and THE OFFICERS COMMITTEE ON BENEFIT PLANS, as Plan Administrator,

*Defendants-Appellees-Cross-Appellants.*

_____

MARGARET BRYERTON, CHERYL A. BROCK, MARK A. FERRAIOLO and MICHAEL CUBBINS,

*Plaintiffs-Appellants*,

—v.—

VERIZON COMMUNICATIONS, INC., VERIZON MANAGEMENT PENSION PLAN and VERIZON EMPLOYEE BENEFITS COMMITTEE,

*Defendants-Appellees.*

_____

B e f o r e: JACOBS, *Chief Judge*, KEARSE and KATZMANN, *Circuit Judges*.

_____

Plaintiffs in two separate cases brought claims alleging that "cash balance" defined benefit plans violated the Employee Retirement Income Security Act's rule against age-based reductions in the rate of benefit accrual, 29 U.S.C. § 1054(b)(1)(H)(i) (2005), as that rule existed prior to the amendment that took effect as of June 29, 2005. The United States District Court for the Southern District of New York (Hellerstein, *J.*) dismissed the claim on summary judgment in 06-4757 and 06-5190. In the other case, 07-1680, the United States District Court for the Southern District of New York (Chin, *J.*) dismissed the claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs in both cases appealed, and we heard the appeals in tandem. We **AFFIRM** the judgments of the district courts: Cash balance plans do not inherently result in an age-based reduction in the rate of benefit accrual.

_____

EDGAR PAUK, New York, NY *for Hirt Plaintiffs-Appellants-Cross-Appellees*

ELI GOTTESDIENER, Gottesdiener Law Firm, PLLC, Brooklyn, NY *for Bryerton Plaintiffs-Appellants*

KENNETH S. GELLER (Craig W. Canetti, *on the brief*), Mayer, Brown, Rowe & Maw LLP, Washington, DC, Wilber H. Boies and Nancy G. Ross, McDermott, Will & Emery LLP, Chicago, IL, and Mark D. Wincek, Kilpatrick Stockton LLP, Washington, DC *for The Equitable Defendants-Appellees-Cross-Appellants*

JEFFREY G. HUVELLE (Eric R. Sonnenschein, *on the brief*), Covington & Burling LLP, Washington, DC *for Verizon Defendants-Appellees*

Kent A. Mason and Jason K. Bortz, Davis & Harman LLP, Washington, DC *for Amici Curiae American Benefits Council, AT&T Corp., Business Roundtable, BP America Inc., El Paso Corporation, Honeywell International Inc., Mercer Human Resource Consulting, Inc., Watson Wyatt Worldwide, and Xerox Corporation*

Carol Connor Flowe and Gretchen Dixon, Arent Fox LLP, Washington, DC, and Robin S. Conrad and Shane Brennan, National Chamber Litigation Center, Washington, DC *for Amicus Curiae Chamber of Commerce of the United States of America*

Jeffrey Lewis and Vincent Cheng, Lewis, Feinberg, Lee, Renaker & Jackson, P.C., Oakland, CA, Stephen R. Bruce and Allison C. Caalim, Stephen R. Bruce Law Offices, Washington, DC, Lynn Lincoln Sarko, Derek Loeser, Amy Williams-Derry, and Karin Swope, Keller Rohrback, LLP, Seattle WA, and Marissa M. Tirona, National Employment Lawyers Association, San Francisco, CA, *for Amicus Curiae National Employment Lawyers Association*

Eli Gottesdiener, Gottesdiener Law Firm, PLLC, Brooklyn, NY *for Amicus Curiae Pension Rights Center*

Jeffrey P. Englander, Morrison Cohen LLP, New York, NY *for Amicus Curiae Young Women's Christian Association Retirement Fund, Inc.*

_____

KATZMANN, *Circuit Judge*:

In 2006, Congress enacted the Pension Protection Act ("PPA"), which amended the Employee Retirement Income Security Act of 1974 ("ERISA") to specifically allow for cash balance defined benefit plans. Pub. L. No. 109-280, § 701(a)(1), 120 Stat. 780, 981 (2006). The amendment, however, applies only to periods beginning on or after June 29, 2005. *Id.* § 701(e)(1), 120 Stat. 991. This opinion addresses two appeals, both raising the same issue: whether, prior to June 29, 2005, cash balance defined benefit plans ran afoul of the prohibition in ERISA § 204(b)(1)(H)(i) against age-based reductions in the rate of benefit accrual. 29 U.S.C. § 1054(b)(1)(H)(i). Our charge is a limited one--to interpret the relevant statute, faithful to Congress's meaning.

All of our sister circuits that have considered this question have found that, even prior to amendment by the PPA, ERISA did not proscribe cash balance defined benefit plans. *See Drutis v. Rand McNally & Co.*, 499 F.3d 608 (6th Cir. 2007); *Register v. PNC Fin. Servs. Group, Inc.*, 477 F.3d 56 (3d Cir. 2007); *Cooper v. IBM Personal Pension Plan*, 457 F.3d 636 (7th Cir. 2006). There has been some uncertainty among district courts in this Circuit, however, concerning whether our decision in *Esden v. Bank of Boston*, 229 F.3d 154 (2d Cir. 2000), dictates another result. *Compare In re Citigroup Pension Plan ERISA Litig.*, 470 F. Supp. 2d 323, 341-45 (S.D.N.Y. 2006) (concluding cash balance plans violate ERISA § 204(b)(1)(H)), *In re J.P. Morgan Chase Cash Balance Litig.*, 460 F. Supp. 2d 479, 488 (S.D.N.Y. 2006) (same), *Richards v. FleetBoston Fin. Corp.,* 427 F. Supp. 2d 150, 167 (D. Conn. 2006) (same), *and Parsons v. AT&T Pension Benefit Plan*, No. 3:06CV552, 2006 WL 3826694, at *1 (D. Conn. Dec. 26, 2006) (same), *with Amara v. Cigna Corp.*, 534 F. Supp. 2d 288, 318-20 (D. Conn. 2008) (concluding cash balance plans do not inherently violate ERISA § 204(b)(1)(H)), *Custer v. S. New England Tel. Co.*, No. 3:05CV1444, 2008 WL 22258, at *8-10 (D. Conn. Jan. 25, 2008), *Bryerton v. Verizon Commc'ns Inc.*, No. 06 Civ. 6672, 2007 WL 1120290, at *4-5 (S.D.N.Y. Apr. 17, 2007) (same), *Laurent v. PriceWaterhouseCoopers LLP,* 448 F. Supp. 2d 537, 552 (S.D.N.Y. 2006) (same), *and Hirt v. Equitable Ret. Plan*, 441 F. Supp. 2d 516, 550 (S.D.N.Y. 2006) (same). We write today to clarify that we share the view of cash balance plans put forth by the Third, Sixth, and Seventh Circuits: Even prior to the PPA, cash balance plans could survive scrutiny under ERISA § 204(b)(1)(H)(i).

The parties in *Hirt v. Equitable Retirement Plan*, 06-4757 and 06-5190, raise a number

of other arguments which we dispose of in a summary order also filed today. We therefore affirm both judgments below.

## BACKGROUND

*I. ERISA and Cash Balance Plans*

ERISA recognizes two basic types of retirement plans: "defined contribution plans" and "defined benefit plans." Under ERISA, a defined contribution plan (also known as an "individual account plan") is "a pension plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses." 29 U.S.C. § 1002(34). A 401(k) plan is a common defined contribution plan. Any plan that does not meet the definition of defined contribution plan is a defined benefit plan. 29 U.S.C. § 1002(35). We described the traditional defined benefit plan in *Esden*:

> A conventional defined benefit plan[] adopting a final-pay formula would credit the employee with a specific percentage of salary for each year of employment. For instance, an employee might accrue a pension of 1.5% of "salary" for every year of service. After 30 years of service he would have a pension equivalent to 45% of "salary." Salary may be defined as final salary, or the average of salary in the last five years.

229 F.3d 154, 158 n.4 (2d Cir. 2000).

Defined benefit and defined contribution plans differ in who bears the risk of investment performance. Whereas defined benefit plans generally guarantee a specific benefit without regard to how the market performs, defined contribution plans guarantee only that the employer will contribute to the investment account. In defined contribution plans, "[t]he employee is entitled 'to whatever assets are dedicated to his individual account.' The employee bears the

investment risks and the employer does not guarantee a retirement benefit to the employee."

*Register v. PNC Fin. Servs. Group, Inc.*, 477 F.3d 56, 61-62 (3d Cir. 2007) (quoting *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999)) (internal citation omitted).[1]

A cash balance plan is a relatively new form of plan intended to combine attributes of both defined contribution and defined benefit plans. In *Esden*, we also described the typical cash balance plan:

> Under a cash balance pension plan, a hypothetical account is established in each participant's name. Benefits are credited to that "account" over time, driven by two variables: (1) the employer's hypothetical "contributions," and (2) hypothetical earnings expressed as interest credits. Employer "contributions" are usually expressed as a percentage of salary, the rate of which may vary with employee tenure. Interest credits may be at a fixed interest rate, but more often they are tied to an extrinsic index--for example, U.S. Government securities of a specified maturity--and they vary accordingly. Each year an employee receives a statement of her "account" balance, and can therefore see the value of her pension benefit. These features are designed to mimic the simplicity of a defined contribution plan.

229 F.3d at 158. Thus, cash balance plans are often described as "hybrid": they create a benefit structure that simulates that of defined contribution plans, but employers do not deposit funds in actual individual accounts, and employers, not employees, bear the market risks. *See, e.g.*, *West v. AK Steel Corp.*, 484 F.3d 395, 399 (6th Cir. 2007). Because the individual accounts and contributions thereto are merely for recordkeeping purposes (and do not actually exist), cash balance plans constitute defined benefit plans under ERISA. *See Esden*, 229 F.3d at 158 n.6.

---

[1] For example, if an employer contributed $5000 each year to an employee's defined contribution account, that money may be invested. At retirement, the employee would receive the actual contents of the account (*i.e.*, the value of the investments)--not $5000 times the number of years of employment.

*II.  Hirt v. The Equitable*

Over a four-year period beginning in 1988, The Equitable Life Assurance Society of America ("Equitable") converted the pension plans it offered to employees, managers, and agents from traditional defined benefit plans to a single cash balance plan.[2]  On August 23, 2001, the *Hirt* plaintiffs filed a putative class action alleging, *inter alia*, that the cash balance formula violated ERISA § 204(b)(1)(H)(i), which prohibited a pension plan from reducing the "rate of an employee's benefit accrual . . . because of the attainment of any age."  29 U.S.C. § 1054(b)(1)(H)(i).  The district court certified the class in 2003.  Both sides moved for summary judgment, and, in an order dated July 20, 2006, the district court ruled in favor of defendants on the claim here at issue, finding "it is clear that Equitable's plan does not reduce the rate of an employee's benefit accrual because of attainment of any age.  The plan merely preserves the time value of money, and thus treats all participants equally." *Hirt v. Equitable Ret. Plan*, 441 F. Supp. 2d 516, 551-52 (S.D.N.Y. 2006) (internal quotation marks omitted).  Plaintiffs appeal that determination.

*III.  Bryerton v. Verizon Communications*

The Verizon Management Pension Plan is a cash balance plan covering Verizon's non-union employees and the successor in interest to, *inter alia*, the Bell Atlantic Cash Balance Plan

---

[2] Under Equitable's cash balance plan, Equitable contributes "pay credits" to each participant's hypothetical account in the amount of 5% of annual compensation up to the participant's Social Security yearly benefits base, and 10% of the employee's compensation over that amount.  The account balance earns "interest credits" calculated monthly at a rate established in advance each year.  The interest rate is set to the average rate for one-year Treasury Bills for the twelve-month period ending in November of the prior year.

and the NYNEX Cash Balance Plan. Both the Bell Atlantic Plan and the NYNEX Plan were traditional defined benefit plans prior to their conversion to the cash balance method in 1996 and 1998, respectively. The Verizon Plan used a formula that depended on the participant's age and years of service to calculate pay credits.[3] On June 30, 2006, Verizon froze its plan as a cost-cutting measure and participants stopped accruing pay credits. Participants are still entitled, however, to benefits accrued prior to the freeze, in addition to interest credits and other adjustments.

The four plaintiffs filed a putative class action on September 1, 2006, alleging, *inter alia*, that by operation and design the Verizon plan violated ERISA § 204(b)(1)(H) for the period prior to June 29, 2005, the effective date of the ERISA amendment specifically allowing cash balance plans. Plaintiffs thereafter moved for class certification and appointment of class counsel, and defendants moved to dismiss the complaint. In an order dated April 17, 2007, the district court dismissed the complaint, ruling "the Plan does not violate § 204(b)(1)(H)(i) of ERISA." *Bryerton v. Verizon Commc'ns Inc.*, No. 06 Civ. 6672, 2007 WL 1120290, at *5 (S.D.N.Y. Apr. 17, 2007). The district court denied the motion for class certification and appointment of class counsel as moot. Plaintiffs appeal the dismissal of their claim.

---

[3] Participants with a combined age and years of service under 35 received monthly pay credits equal to 4% of monthly salary; participants whose combined total was between 35 and 49 received pay credits at 5% of monthly salary; participants whose combined total was between 50 and 64 received pay credits at 6% of monthly salary; and participants with a combined total of 65 and above received pay credits at 7% of monthly salary. In addition, the amount in the cash balance account earned (and continues to earn) interest at a uniform rate equal to the average annual yield on one-year Treasury bills plus one percentage point, with the total limited to the yield on 30-year Treasury bonds.

DISCUSSION

We review *de novo* both the dismissal of a claim pursuant to Fed. R. Civ. P. 12(b)(6) and the dismissal of claim on summary judgment. *See, e.g.*, *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191, 202 (2d Cir. 2007). Although the two cases before us on appeal present different procedural postures, they turn on the identical issue of law: whether a cash balance plan can be reconciled with ERISA § 204(b)(1)(H)(i).

ERISA § 204 provides that "a defined benefit plan shall be treated as not satisfying the requirements of this paragraph if, under the plan, an employee's benefit accrual is ceased, or the rate of an employee's benefit accrual is reduced, because of the attainment of any age." 29 U.S.C. § 1054(b)(1)(H)(i).[4] The district court in *Richards v. FleetBoston Financial Corporation* set forth the argument that, prior to the effective date of the PPA, cash balance plans violated this provision:

> In a particular quarter, given two employees who are identically situated except for their ages, the Amended Plan never allocates a smaller cash value to the older employee's hypothetical account than that allocated to the younger employee's hypothetical account. . . . [However,] an older employee receiving the same dollar amount of contribution to her cash balance account in a given quarter as that received by a younger employee buys a smaller age-65 pension annuity with that money. This phenomenon occurs because the older worker is closer to retirement, so the money contributed to her hypothetical account has less time to earn annual interest credits under the plan than does the money contributed to the younger worker's account.

427 F. Supp. 2d 150, 162-63 (D. Conn. 2006). Thus, the *Hirt* plaintiffs argue, "as a matter of simple arithmetic . . . the rate at which participants earn their pension decreases with advancing

---

[4] A parallel provision appears in the Internal Revenue Code. *See* 26 U.S.C. § 411(b)(1)(H)(i).

age."

Plaintiffs' "simple arithmetic" depends on measuring the "rate of benefit accrual" by reference to the end product--the age-65 annuity that can be purchased with the account balance-- instead of the periodic deemed contribution thereto. This is the approach taken by the district courts in this Circuit that have invalidated cash balance plans. *See In re Citigroup Pension Plan ERISA Litig.*, 470 F. Supp. 2d 323, 342-43 (S.D.N.Y. 2006); *In re J.P. Morgan Chase Cash Balance Litig.*, 460 F. Supp. 2d 479, 486-88 (S.D.N.Y. 2006); *Richards*, 427 F. Supp. 2d at 164-65. We decline to endorse this reading, finding ourselves in agreement with every circuit court to consider the question: "The better view . . . is that the 'rate of benefit accrual' refers to the employer's contribution to a plan, and therefore any difference in output as a result of time and compound interest does not violate § 204(b)(1)(H)(i)." *Drutis v. Rand McNally & Co.*, 499 F.3d 608, 614 (6th Cir. 2007); *see also Register v. PNC Fin. Servs. Group, Inc.*, 477 F.3d 56, 68 (3d Cir. 2007); *Cooper v. IBM Personal Pension Plan*, 457 F.3d 636, 639 (7th Cir. 2006).

In arguing for an output-oriented evaluation of the rate of benefit accrual, plaintiffs emphasize ERISA's definition of the similar term, "accrued benefit":

The term "accrued benefit" means--

(A) in the case of a defined benefit plan, the individual's accrued benefit determined under the plan and . . . expressed in the form of an annual benefit commencing at normal retirement age, or
(B) in the case of a plan which is an individual account plan, the balance of the individual's account.

29 U.S.C. § 1002(23). Because ERISA measures "accrued benefit" by reference to the ultimate retirement-age annuity, plaintiffs claim, we should apply the same test to our consideration of

"benefit accrual." Plaintiffs rely on the district court's reasoning in *Richards*:

> In light of the great similarity that ["rate of benefit accrual"] bears to the statutorily defined term "accrued benefit," and the fact that ERISA requires accrued benefit to be measured as an annual benefit commencing at normal retirement age for defined benefit plans, but requires accrued benefit to be measured as the balance of an individual's account for defined contribution plans, the term "rate of benefit accrual," as used in section 204(b)(1)(H)(i), refers to rate measured as a change in the annual benefit commencing at normal retirement age. The statute is unambiguous in this respect . . . .

427 F. Supp. 2d at 164-65.

But Congress did not use the term "accrued benefit" when it drafted ERISA § 204(b)(1)(H)(i); rather, Congress used the term "rate of benefit accrual." "When Congress uses particular language in one section of a statute and different language in another, we presume its word choice was intentional." *United States v. Peterson*, 394 F.3d 98, 107 (2d Cir. 2005). Had Congress meant to incorporate the concept of the retirement-age annuity into § 204(b)(1)(H)(i), Congress could have drafted it to reference the defined term, "accrued benefit." Indeed, the immediately preceding subsection, ERISA § 204(b)(1)(G), does exactly that: "a defined benefit plan shall be treated as not satisfying the requirements of this paragraph if the participant's *accrued benefit* is reduced on account of any increase in his age or service." 29 U.S.C. § 1054(b)(1)(G) (emphasis added). Congress knew how to reference accrued benefit. Like the Supreme Court in *Russello v. United States*, we "refrain from concluding here that the differing language in the two subsections has the same meaning in each. We would not presume to ascribe this difference to a simple mistake in draftsmanship." 464 U.S. 16, 23 (1983).

In support of the position that ERISA § 204(b)(1)(H) should be considered in terms of output rather than input, the district court in *J.P. Morgan Chase* listed dictionary definitions for

"benefit" and "accrual." 460 F. Supp. 2d at 486. But we think the court also should have considered the meaning of the term "rate," as § 204(b)(1)(H)(i) outlaws age-based reductions in the *rate* of benefit accrual. In this context, rate carries with it a temporal limitation: One cannot evaluate a rate of accrual without controlling for the passage of time. Thus, the fact that the ultimate benefit might grow to be larger for younger employees--who have more time until normal retirement age than their older counterparts--would not be relevant to the comparison of accrual rates. As the Supreme Court has instructed, "[a] reduction in total benefits due is not the same thing as a reduction in the rate of benefit accrual; the former is the final outcome of the calculation, whereas the latter is one of the factors in the equation." *Lockheed Corp. v. Spink*, 517 U.S. 882, 897 (1996).

Although we find the statute unambiguous, we note briefly that the legislative history of ERISA § 204(b)(1)(H) reinforces this reading. As originally enacted in 1974, ERISA did not require that a pension plan allow employees who worked beyond normal retirement age to continue earning additional pension benefits. *See* H.R. Conf. Rep. 99-1012, at 378, *as reprinted in* 1986 U.S.C.C.A.N. 3868, 4023 (1986). Congress amended ERISA to add § 204(b)(1)(H) as part of the Omnibus Budget Reconciliation Act of 1986, Pub. L. 99-509, § 9202, 100 Stat. 1874, 1975. Section 9202 of the act, which effected this change, was titled "Benefit Accrual Beyond Normal Retirement Age." *Id*. In addition, the Conference Report describes the bill as amending ERISA "to require a plan to provide for benefit accruals and contributions with respect to an employee's years of plan participation after normal retirement age." H.R. Conf. Rep. 99-1012, at 376, *as reprinted in* 1986 U.S.C.C.A.N. at 4021. In other words, Congress sought to prohibit the

creation of pension "cliffs" from which 65-year-old workers could fall. Given that Congress was concerned with what happens to a worker's retirement benefits *after* normal retirement age, it makes little sense to look to the accrued benefit--i.e., the annual benefit commencing *at* normal retirement age--as a reference point in evaluating whether there has been a reduction in the rate of benefit of accrual. Thus, the legislative history is fully consistent with the plain meaning of the statute.

Plaintiffs also suggest that our decision in *Esden* dictates a different result. We disagree. In *Esden* we addressed ERISA § 204(c)(3), which requires that lump-sum distributions must be the "actuarial equivalent" of an "annual benefit . . . commencing at normal retirement age." 29 U.S.C. § 1054(c)(3). We upheld the position put forth by the Internal Revenue Service ("IRS") that "the benefits attributable to interest credits are accrued benefits" and consequently "nonforfeitable." *Esden v. Bank of Boston*, 229 F.3d 154, 166 (2d Cir. 2000). Thus, we concluded, for the purposes of a lump-sum distribution, in projecting a cash balance account's value out to normal retirement age, a cash balance plan must use the interest rate provided under the plan, even where that interest rate exceeds the statutory discount rate used to determine the present value (a phenomenon commonly referred to as "whipsaw").[5] Unlike ERISA § 204(b)(1)(H)(i), the statutory provision at issue in *Esden* specifically references "accrued benefit" and "normal retirement age." That future interest credits must be included in a § 204(c)(3) distribution, which depends on the normal-retirement-age benefit, does not dictate

---

[5] The PPA amended ERISA to remove the whipsaw effect and allow cash balance plans to make lump sum distributions equal to the amount expressed in the beneficiary's hypothetical account. *See generally West v. AK Steel Corp.*, 484 F.3d 395, 401-02 (6th Cir. 2007).

-13-

that they must be prospectively included in our consideration of the "rate of benefit accrual," which does not.[6]

Fundamentally, *Esden* was a case in which we deferred to the IRS's explicit interpretation of ERISA and the Internal Revenue Code. We held, "[t]he IRS's consistent interpretation of the statutes and its own regulations is reasonable and is entitled to deference. . . . [T]he district court erred in giving effect to the terms of the plan rather than enforcing the statutory and regulatory scheme as authoritatively interpreted by the IRS." *Esden*, 229 F.3d at 159. The IRS's interpretation of the relevant statutes appeared in Treasury Regulations and Notice 96-8, in which the IRS applied the regulations requiring plans to project hypothetical balances to normal retirement age, notwithstanding the whipsaw effect. Our analysis was as follows: "Although the IRS's guidance on how the existing regulatory framework applies to cash balance plans comes in a Notice, rather than in new regulations or a revenue ruling, such a consistent and reasonable

---

[6] Plaintiffs also make much of Congress's use of different wording in the defined benefit and defined contribution anti-discrimination provisions. ERISA § 204(b)(2)(A) states, "[a] defined contribution plan satisfies the requirements of this paragraph if, under the plan, allocations to the employee's account are not ceased, and the rate at which amounts are allocated to the employee's account is not reduced, because of the attainment of any age." 29 U.S.C. § 1054(b)(2)(A). Plaintiffs suggest that in using an input-oriented evaluation of "rate of benefit accrual" we are actually applying the anti-discrimination provision that governs defined contribution plans, in contravention of *Esden*'s admonition that "[h]owever 'hybrid' in design a cash balance plan may be, it remains subject to a regulatory framework that is in many regards rigidly binary." *Esden*, 229 F.3d at 158 n.6. We find plaintiffs' argument unavailing. "To say that defined-benefit and defined-contribution plans are governed by different subsections of ERISA is not to say that what is lawful for one must be forbidden to the other." *Cooper*, 457 F.3d at 641.

interpretation by the responsible agency is entitled to deference, regardless of its form of publication." *Id*. at 169. In this case, by contrast, plaintiffs direct us to no "consistent and reasonable interpretation" from the IRS espousing their position. Unlike in *Esden*, here there is nothing to which we can defer, and the statutory language is consistent with, indeed it compels, the result we reach today.

We recognize that underlying the parties' legal arguments are policy differences, and we appreciate that the matter at hand implicates policy issues. Policy determinations are the domain of the elected branches, not the courts. Our task is limited to analyzing the statutory scheme, and to adhering to Congress's purposes and meaning.

In sum, we join the Third, Sixth, and Seventh Circuits and hold that cash balance defined benefit plans do not by definition violate ERISA's prohibition against age-based reductions in the rate of benefit accrual, even as that prohibition existed prior to amendment by the PPA.

## CONCLUSION

For the reasons set forth above, and for the additional reasons discussed in our accompanying summary order, we AFFIRM the judgments of the district courts in both cases.