*In Re: Citigroup Pension Plan ERISA*

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2008

(Argued: March 20, 2009     Decided: October 19, 2009)

Docket Nos. 08-0459-cv (L); 08-0538-cv (XAP)

MICHAEL LONECKE, RAYMOND DUFFY,
ANNE NELSON, ROBERT S. FASH, AND
CRAIG A. HARRIS, INDIVIDUALLY AND ON
BEHALF OF ALL THOSE SIMILARLY SITUATED,

*Plaintiffs-Appellees-Cross-Appellants,*

WILLIAM WOODWARD, INDIVIDUALLY AND
ON BEHALF OF ALL THOSE SIMILARLY SITUATED,

*Plaintiff-Appellee,*

–v.–

CITIGROUP PENSION PLAN, PLANS ADMINISTRATION
COMMITTEE OF CITIGROUP, INC., CITIGROUP, INC.,

*Defendants-Appellants-Cross-Appellees.*

Before:   JACOBS, *Chief Judge*, WESLEY, *Circuit Judge*, and
          CROTTY,[*] *District Judge*.

     Appeal from an order of the United States District Court for the Southern District of New York (Scheindlin, *J.*), entered on December 11, 2006, granting partial summary judgment to Plaintiffs.

REVERSED.

_____

EDGAR PAUK, Law Office of Edgar Pauk, Esq.,
     Brooklyn, New York, and Brad Nelson Friedman,
     Milberg LLP, New York, New York, *for*
     *Plaintiffs-Appellees-Cross-Appellants*.

DEREK W. LOESER, Keller Rohrback LLP, Seattle,
     Washington, *for Plaintiff-Appellee*.

MYRON D. RUMELD, Proskauer Rose LLP, New York, New
     York; LEWIS R. CLAYTON, Paul, Weiss, Rifkind,
     Wharton & Garrison, LLP, New York, New York,
     *for Defendants-Appellants-Cross-Appellees*.

_____

WESLEY, *Circuit Judge*:

     Plaintiffs are five present or former employees of either Smith Barney or Citibank, N.A., both of which are divisions of Citigroup, Inc. ("Citigroup"). Plaintiffs, and the class they represent, allege that the Citibuilder Cash

---

[*] The Honorable Paul A. Crotty, United States District Judge for the Southern District of New York, sitting by designation.

Balance Plan ("Plan") violates the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 *et seq*.  Plaintiffs seek injunctive and declaratory relief as well as monetary damages.

By order dated December 11, 2006, the United States District Court for the Southern District of New York (Scheindlin, *J.*) granted partial summary judgment to Plaintiffs on various grounds, including: first, that the Plan violated ERISA's minimum benefit accrual rules through its use of the "fractional rule"; and second, that Citigroup violated ERISA's § 204(h) notice requirement.  29 U.S.C. § 1054(h).[1]  Citigroup challenges those two conclusions. Plaintiffs cross-appeal, raising a number of issues.  On appeal, both parties agree that the district court erred in concluding that the "fractional rule" can never properly be

---

[1] The district court also concluded that the structure of the Plan violated ERISA's age discrimination rules. However, subsequent to the district court's opinion in this case, a panel of this court held that "cash balance . . . plans do not by definition violate ERISA's prohibition against age-based reductions in the rate of benefit accrual."  *Hirt v. Equitable Ret. Plan for Employees, Managers & Agents*, 533 F.3d 102, 110 (2d Cir. 2008).  The age discrimination count, therefore, is not part of this appeal.

applied to cash balance plans, such as Citigroup's Plan. Because we find that Citigroup's Plan does not violate ERISA's minimum benefit accrual rules, and that Citigroup did not violate ERISA's § 204(h) notice requirements, we reverse.

**I.  BACKGROUND**

**A.  ERISA Benefit Plans Generally**

ERISA recognizes two basic types of retirement plans: defined contribution plans and defined benefit plans. *Hirt v. Equitable Ret. Plan for Employees, Managers & Agents*, 533 F.3d 102, 104 (2d Cir. 2008). Defined contribution plans, also known as individual account plans, "guarantee only that the employer will contribute [a certain amount] to the [employee's retirement] account," without providing any guarantee as to that account's value upon the employee's retirement. *Id.* at 105; *see also* 29 U.S.C. § 1002(34). A defined contribution plan is a "pension plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and

4

losses." 29 U.S.C. § 1002(34).[2] Both the employee and the employer may contribute to a defined contribution plan, but the employer's contribution is fixed. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999).

Defined benefit plans "generally guarantee [employees] a specific benefit [upon retirement] without regard to how the market performs." *Hirt*, 533 F.3d at 105; *see also* 29 U.S.C. § 1002(35). In contrast to a defined contribution plan, a defined benefit plan "consists of a general pool of assets rather than individual dedicated accounts." *Hughes Aircraft Co.*, 525 U.S. at 439. The pool of assets "may be funded by employer or employee contributions, or a combination of both." *Id.* In a defined benefit plan, "no plan member has a claim to any particular asset that composes a part of the plan's general asset pool." *Id.* at 440. Rather, members have a right to a defined level of benefits, known as accrued benefits. *Id.* In a defined benefit plan, an accrued benefit is "expressed in the form of an annual benefit commencing at normal retirement age."

---

[2] A 401(k) plan is a common defined contribution plan. *See Hirt*, 533 F.3d at 104; *see also* 29 U.S.C. § 1002(34).

29 U.S.C. § 1002(23)(A). Whereas, in a defined contribution plan, the accrued benefit is understood as "the balance of the individual's account." 29 U.S.C. § 1002(23)(B).

Defined contribution and defined benefit plans primarily "differ in who bears the risk of investment performance." *Hirt*, 533 F.3d at 105. In a defined contribution plan, the employee bears the risks, while in a defined benefit plan, "the employer typically bears the entire investment risk." *Hughes Aircraft Co.*, 525 U.S. at 439. In a defined benefit plan, the employer is obligated to "cover any underfunding as the result of a shortfall that may occur from the plan's investments." *Id.* And, if a defined benefit plan is overfunded, the employer "may reduce or suspend [its] contributions." *Id.* at 440.

Within the context of these two types of retirement plans, employers have developed a relatively new kind of plan called a "cash balance plan." *Hirt*, 533 F.3d at 105. The cash balance plan is "intended to combine attributes of both defined contribution and defined benefit plans." *Id.* "[C]ash balance plans are often described as 'hybrid': they create a benefit structure that simulates that of defined

6

contribution plans, but employers do not deposit funds in actual individual accounts, and employers, not employees, bear the market risks." *Id.* Cash balance plans are considered defined benefit plans under ERISA because the accounts are hypothetical in nature and the employee receives a specified lump-sum payout upon retirement. *Esden v. Bank of Boston*, 229 F.3d 154, 158 (2d Cir. 2000); *see also* 29 U.S.C. § 1002(35). As a result of this classification, the term "accrued benefit" in a cash balance plan is "expressed in the form of an annual benefit commencing at normal retirement age." *Esden*, 229 F.3d at 163 (quoting 29 U.S.C. § 1002(23)(A)).[3]

When an employer establishes a cash balance plan, an account is created in the name of each participant to keep track of his or her accrued benefits. *Bilello v. JPMorgan*

---

[3] In 2006, Congress enacted the Pension Protection Act ("PPA"), which amended ERISA to allow specifically for cash balance defined benefit plans. Pub. L. No. 109-280, § 701(a)(1), 120 Stat. 780, 981 (2006). The amendment applies to periods commencing on or after June 29, 2005. *Id.;* § 701(e)(1), 120 Stat. at 991. Because Plaintiffs' challenge to the Citibuilder Cash Balance Plan concerns a period prior to the PPA's effective date, the terms of the PPA are not implicated by this appeal. In any event, as we have held, "[e]ven prior to the PPA, cash balance plans could survive scrutiny under ERISA." *Hirt*, 533 F.3d at 104.

7

*Chase Ret. Plan*, — F. Supp. 2d —, No. 07-cv-7379 (DLC), 2009 WL 2461005, at *1 (S.D.N.Y. Aug. 12, 2009).  In a cash balance plan, the account contains "pay credits," which "represent[] a percentage of the participant's salary that is periodically deposited into the account, as well as 'interest credits,' which apply a common interest rate to the account balances."  *Id.*  Pay credits only accumulate until the termination of the participant's employment, but interest credits continue to accrue until the benefits are distributed.  *Id.*  In a cash balance plan, the employer may offer the employee the option of a lump sum payout instead of an annuity; however, "any such payout must be worth at least as much, in present terms, as the annuity payable at normal retirement age."  *Id.*

Proponents of cash balance pension plans assert that this "hybrid" structure is beneficial for employees because it is easier for them to understand, it allows for greater portability, it establishes a system whereby benefits accrue more evenly over an employee's career, and it is "therefore[] better suited to the increased job-mobility of contemporary labor markets."  *Esden*, 229 F.3d at 158 n.5.

8

Advocates of cash balance plans also maintain that they benefit employers. They suggest that "because employees better appreciate the value of their pension rights, the employer's fringe benefit dollar has greater impact." *Id.* They also argue that a cash balance plan "retains the funding advantages of a defined benefit plan" for the employer. *Id.* Specifically, "actual contributions are made to a single trust fund, based on actuarial assumptions; therefore . . . the employer retains funding flexibility as long as the solvency of the plan is maintained;" and investment returns that exceed "the promised interest credits (as well as forfeitures of the non-vested benefits of any terminated participants)" are retained by the employer. *Id.* Almost one-third of all single-employer defined benefit plan participants — approximately ten million workers — are covered by cash balance plans, or other similar hybrid plans.

**B.   The Citigroup Plan**

In 1998, Citicorp merged with Travelers Corporation. Authority to amend Citibank's pension plan was vested in the plan sponsor, Citigroup, by action of its Board of

9

Directors. In 1999, at a meeting of the Board of Directors, Citigroup converted its traditional, final pay pension formula into a cash balance plan. The Citigroup Board adopted a series of resolutions in October of 1999 incorporating the cash balance design into the Plan. The conversion had an effective date of January 1, 2000.

In May of 2001, the provisions of the newly adopted cash balance plan were set forth in Plan Article 4.1. Under the Plan, Citigroup created a hypothetical account for each participating employee, and then "credited" each account with two kinds of "deposits" — Benefit Credits and Interest Credits. Benefit Credits were awarded to participants as a percentage of that year's total compensation. Under the Plan's formula, Benefit Credits increased with age and years of service, ranging from two percent for participants under age twenty-five in their first ten years of service, to seven percent for participants fifty years or older with fifteen or more years of service. Interest credited to the account was awarded based on an extrinsic index rate — the thirty-year Treasury rate. At retirement, participants would be entitled to a lump sum payout based on the

10

accumulated value of their accounts, or to an actuarially equivalent pension.

Although the provisions of the amendments were not set forth in an executed Citibuilder Retirement Plan document until May of 2001, in the months leading up to the effective date Citigroup sent out a number of brochures and pamphlets concerning the changes to the structure of the benefit plan. Pursuant to ERISA § 204(h), official notice of the amendment was given to all Plan participants in a letter from Tim Peach, Director of Retirement Benefits, dated December 9, 1999. The letter was entitled: "The Citigroup Pension Plan Notice of Significant Reduction in Benefit Accruals for Certain Employees of Citigroup Inc. and its Subsidiaries" (the "1999 Notice").

The 1999 Notice contained a general summary of how the new cash balance plan would work, as well as a table listing the percentages of salaries credited to accounts annually, as determined by an employee's age and years of service. The cover letter referenced ERISA § 204(h) and explained that, due to the forthcoming amendments to the pension plan, it was "likely that some employees would see some level of

11

reduction in total accumulations in the future." The documentation accompanying the letter, distributed to each affected employee, also outlined the mechanisms of a cash balance plan. It explained that under the Plan as amended, the "company credits a percentage of your total compensation each year to a hypothetical account. That percentage generally increases with your age and service." The 1999 Notice also explained that "the hypothetical account earns interest credits at a rate based on 30-year Treasury bonds." The 1999 Notice did not, however, indicate the formula that the Plan would apply in order to achieve compliance with statutory accrual principles.

The Plan was again amended, effective January 1, 2002. This amendment incorporated the same cash balance regime adopted in 2000, but recalibrated the range of Benefit Credits allotted annually to employees' accounts. Pursuant to this amendment, Benefit Credits ranged from one and one-half percent for participants under age twenty-nine in their first five years of service, to six percent for those fifty-five or older with fifteen or more years of service. Citigroup employed a notification process similar to the

12

process it utilized in 1999. Pursuant to ERISA § 204(h), an information package dated December 2001 was sent to Plan participants informing them of the amendment. As with the 1999 Notice, there was no mention of the means by which the Plan would ensure compliance with ERISA's accrual requirements.

### C. The Minimum Benefit Accrual Tests

Cash balance plans, such as the Citibuilder Plan, are defined benefit plans within the meaning of ERISA because they guarantee a prescribed level of retirement benefits. *Esden*, 229 F.3d at 158; *see also* 29 U.S.C. § 1002(35). All defined benefit plans must comply with ERISA's minimum benefit accrual rules, which are primarily designed to minimize "backloading." *Langman v. Laub*, 328 F.3d 68, 71 (2d Cir. 2003); H.R. Rep. No. 93-807 (1974), reprinted in 1974 U.S.C.C.A.N. 4639, 4688. Backloading occurs when a plan awards a covered employee disproportionately higher benefit accruals for later years of service. *Langman*, 328 F.3d at 71. Thus, while ERISA does not require pension plans to pay out any specific dollar amount, it does regulate the rate at which benefits accrue. 29 U.S.C. §

13

1054(b)(1); *see Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 743 (2004). Toward that end, ERISA sets forth three alternative minimum benefit accrual tests; pension plans are required to pass one. 29 U.S.C. § 1054(b)(1)(A)-(C). Two of these tests are implicated by this appeal: the 133 1/3 test and the fractional test.

Under the 133 1/3 test, the rate of benefit accrual in any future year may not be more than one-third greater than the rate in the current year. 29 U.S.C. § 1054(b)(1)(B). This test prevents "backloading" by cabining fluctuation in accrual rates. As the Supreme Court explained, the 133 1/3 test "permits the use of any accrual formula as long as the accrual rate for a given year of service does not vary beyond a specified percentage from the accrual rate of any other year under the plan." *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 514 n.9 (1981).

The fractional test "is essentially a pro rata rule under which in any given year, the employee's accrued benefit is proportionate to the number of years of service as compared with the number of total years of service appropriate to the normal retirement age." *Id*; *see also* 29

14

U.S.C. § 1054(b)(1)(C). In other words, this test uses a fractional calculation based on years of service to ensure that benefits accrue at a rate that approximates the prorated amount of the total benefits that the employee would receive if he or she worked until normal retirement age. One unique feature of the fractional test formula is that it uses the employee's current compensation rate to project the total benefits available at retirement. This means that the formula assumes *no* salary increases for the employee.

Article 4.1(e) of the Citibuilder Plan sets forth its mechanism for compliance with ERISA's minimum accrual standards.[4] Although the percentage of compensation that Citigroup contributes to participants' accounts increases by more than one third, based on increasing age and service years, "the Plan may still qualify under the 133 1/3 percent test because of the value of the interest credits compounded annually through normal retirement age." *Esden*, 229 F.3d at

---

[4] The full text of Article 4.1 is set out in the district court's opinion. *In re Citigroup Pension Plan ERISA Litig.*, 470 F. Supp. 2d 323, 329-30 (S.D.N.Y. 2006) ("*Citigroup I*").

167 n.18. Compliance with the 133 1/3 percent rule depends upon the balance between Benefit Credits, which increase with age, and Interest Credits, which decrease with age. Compliance is also contingent upon the variable interest rate remaining sufficiently high to counterbalance the increase in Benefit Credits with the decrease in Interest Credits.

In order to ensure compliance, regardless of fluctuations in the interest rate, Citigroup's Plan provides that when the rate of accrual does not satisfy the 133 1/3 test, participants' accounts will be made to comply with the fractional rule of accrual upon the termination of the period of employment. If the variable interest rate falls to a level at which compliance with the 133 1/3 test is not possible, Citigroup will calculate the minimum account requirements pursuant to Article 4.1(e) and then add the difference to the participants' accounts. Under the interest rates in effect in 2000 and 2001, the Plan was in compliance with the 133 1/3 test, and neither Article 4.1(e) nor the fractional test was implicated. However, beginning in 2002, a change in the interest rate brought the Plan out

16

of compliance with the 133 1/3 test for some participants. Article 4.1(e) was invoked with respect to the affected participants in order to bring the Plan into compliance with ERISA's minimum accrual rules.

### D. ERISA's Notice Requirement

In order to safeguard benefits promised to employees and to ensure that employees can form realistic expectations about the benefits that they will receive, ERISA prohibits employers from reducing the accrual of future benefits without adequate notice to plan participants. *See Frommert v. Conkright*, 433 F.3d 254, 263 (2d Cir. 2006). At all times relevant to the amendments at issue on this appeal, ERISA § 204(h) provided that a pension plan:

> may not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and its effective date, to . . . each participant in the plan.

29 U.S.C. § 1054(h).[5]

---

[5] The statute was subsequently amended, but it is this version that controls in this appeal. *See* Pub. L. No. 107-16, § 659(b), 115 Stat. 38, 139-41 (2001).

17

Guidelines promulgated by the Internal Revenue Service ("IRS") clarify that notice is required when an amendment is "reasonably expected to change the amount of the future annual benefit commencing at normal retirement age." Notice of Significant Reduction in the Rate of Future Benefit Accrual, 63 Fed. Reg. 68,678, 68,680 (Dec. 14, 1998) (codified at 26 C.F.R. pts. 1, 602). Whether an amendment creates a "significant reduction" in accrual rates is determined "based on reasonable expectations taking into account the relevant facts and circumstances at the time the amendment is adopted." *Id.* at 68,681. According to the IRS guidelines, notices may contain "a summary of the amendment, rather than the text of the amendment, if the summary is written in a manner calculated to be understood by the average plan participant." *Id.* at 68,682; *see also Register v. PNC Fin. Servs. Group, Inc.*, 477 F.3d 56, 72 (3d Cir. 2007).

## II. PROCEEDINGS IN THE DISTRICT COURT

Plaintiffs filed consolidated actions on behalf of themselves and a class of similarly situated individuals against Citigroup and its Plan's Administration Committee,

18

alleging that the Citibuilder Plan violates ERISA. *In re Citigroup Pension Plan ERISA Litig.*, 470 F. Supp. 2d 323, 326 (S.D.N.Y. 2006) ("*Citigroup I*"). Plaintiffs seek injunctive and declaratory relief as well as monetary damages. Plaintiffs allege, among other things, that the Plan is impermissibly backloaded due to insufficient Interest Credits; that the Plan's fractional test method of computing accrued benefits is precluded under ERISA; and that Defendants failed to provide Plan participants with adequate notice that the 2000 and 2002 cash balance amendments would reduce the rate of future benefit accrual. *Id.* at 326-27.

On December 12, 2006, on cross-motions for summary judgment, the district court denied Defendants' motion for summary judgment and granted Plaintiffs' motion in part. *Id.* at 327. The court ruled, in relevant part, that, as a matter of law, the Plan violated ERISA's minimum benefit accrual rules, 29 U.S.C. § 1054(b)(1)(A)-(C); and, that the Plan violated ERISA's requirement that Plan administrators provide advance notice of significant reductions in the rate of future benefit accrual, as set out in 29 U.S.C. §

19

1054(h).  *Id.* at 337-40.

The district court concluded that "[b]y its very terms, the fractional rule may only be applied to participants with ten or fewer years of service," and that "the only applicable accrual test is the 133 1/3 rule" because Citigroup utilizes a "career average plan."  *Id.* at 337. The court went on to opine that the "Citigroup formula . . . contravenes the well-acknowledged purpose of the mandatory accrual tests, which is to prevent the backloading of benefits."  *Id.* at 337-38.

With respect to the § 204(h) notices provided by Citigroup, the district court found that they "omitted any mention of the benefit formula's unorthodox approach to calculating benefits and monitoring accrual rates," and that "defendants' failure to either include or summarize Article 4.1(e) in the notices violated § 204(h)."  *Id.* at 339.  The district court found that the notice provided was "substantively inadequate," and rejected Defendants' argument that the notice claims should be "dismissed for plaintiffs' failure to show that they suffered any prejudice."  *Id.* at 339-40 & n.88.

By Opinion and Order dated December 19, 2006, the district court certified a class of plaintiffs consisting of all individuals who were participants in the Plan at any time on or after January 1, 2000, their beneficiaries and estates, and those who are currently subject to the Plan's cash balance formula under ERISA. *In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172 (S.D.N.Y. 2006).

On April 4, 2007, the district court clarified its summary judgment ruling with respect to its finding that Defendants had provided inadequate § 204(h) notice. *In re Citigroup Pension Plan ERISA Litig.*, No. 05-cv-5296 (SAS), 2007 WL 1074912 (S.D.N.Y. Apr. 4, 2007) ("*Citigroup II*"). The court concluded that application of the fractional test under the Citigroup Plan was a "deliberate end-run around statutory guidelines that effectively kept the Plan's accrual rates below the minimum prescribed by Congress." *Id.* at *3. The court held that "[i]nsofar as [its] ruling [of December 12, 2006] suggests that the § 204(h) notices were required to describe how the amendments were going to reduce rates of benefit accrual, their lack of detail was of secondary importance to their material omission of an

21

unorthodox yet vital component of the Plan's formula." *Id.* at *4. The court stated "that had the notices merely identified the Plan's novel compliance mechanism, those few words would likely have been adequate." *Id.* However, because the notice omitted this information, the court's prior conclusion that it was defective remained unchanged. *Id.* On appeal, Plaintiffs contend that this "clarification" constitutes an abuse of discretion on the part of the district court because it prejudiced their notice arguments without an opportunity to be heard.

On November 20, 2007, the district court issued a ruling directing Defendants to adjust the Plan formula in a manner that would bring it into full compliance with the 133 1/3 minimum benefit accrual test. *In re Citigroup Pension Plan ERISA Litig.*, No. 05-cv-5296 (SAS), 2007 WL 4205855, at *3 (S.D.N.Y. Nov. 20, 2007) ("*Citigroup III*"). The court rejected Plaintiffs' arguments that further relief was appropriate on the backloading and notice claims. *Id.*

Pursuant to Federal Rule of Civil Procedure 54(b), the district court entered final judgment on the backloading and notice claims, and simultaneously stayed enforcement of that

judgment pending this appeal.  Defendants appeal from those portions of the final judgment that find violations of ERISA's minimum benefit accrual and notice provisions. Plaintiffs thereafter cross-appealed from the final judgment.

**III.     DISCUSSION**[6]

### A.    The Fractional Rule May be Applied to Cash Balance Plans

The district court concluded that the fractional test can never be applied to career average plans like the cash balance plan at issue in this case.  The court determined that "[b]y its very terms, the fractional rule may only be applied to participants with ten or fewer years of service." *Citigroup I*, 470 F. Supp. 2d at 337.  On appeal, both Citigroup and Plaintiffs agree that a fractional test may legally be applied to a cash balance plan without violating ERISA's minimum benefit accrual rules.  The American

---

[6] It is well known that we review a grant of summary judgment *de novo*.  *State St. Bank & Trust Co. v. Salovaara*, 326 F.3d 130, 135 (2d Cir. 2003).  When, as in this case, there are no material facts in dispute, this court is charged with making a determination as to whether the district court properly applied the relevant law.  *McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 320 F.3d 151, 155 (2d Cir. 2003).

23

Benefits Council, as *amicus curiae*, joins this position. In our view, the position now advanced by all the litigants and the *amicus curiae* is the correct interpretation of ERISA. Contrary to the conclusion of the district court, ERISA § 204(b) provides that all defined benefit plans may use any of the three minimum accrual tests to comply with anti-backloading rules. 29 U.S.C. § 1054(b)(1)(A)-(C).

The fractional rule does not, in fact, state that it may only be applied to participants with ten or fewer years of service.[7] Rather, the rule notes only that in calculating benefits owed, it "tak[es] into account no more than the 10 years of service immediately preceding his separation from service." 29 U.S.C. § 1054(b)(1)(C). The provision is an instruction as to how to perform the accrual calculation, not a blanket prohibition on the types of plans that can utilize the fractional rule. Further, compliance

---

[7] Several district courts in other circuits have also adopted the district court's interpretation. *See, e.g.*, *Wheeler v. Pension Value Plan for Employees of Boeing Co.*, No. 06-cv-500 (DRH), 2007 WL 2608875, at *7 (S.D. Ill. Sept. 6, 2007); *Sunder v. U.S. Bank Pension Plan*, No. 05-cv-01153 (ERW), 2007 WL 541595, at *11 (E.D. Mo. Feb. 16, 2007); *Eaton v. Onan Corp.*, 117 F. Supp. 2d 812, 843 (S.D. Ind. 2000). But, for the reasons discussed in this opinion, we find it unpersuasive.

with the fractional rule is tested "upon [the employee's] separation from [the employer's] service," not, as the district court concluded, on a "year-by-year basis."  26 U.S.C. § 411(b)(1)(C); 29 U.S.C. § 1054(b)(1)(C); *Citigroup I*, 470 F. Supp. 2d at 338.

Congress has authorized the IRS to issue binding regulations under ERISA, and we have noted that these regulations "represent[] the fair and considered judgment of the IRS" and are therefore "entitled to deference." *Esden*, 229 F.3d at 168; *see also* Notice of Significant Reduction in the Rate of Future Benefit Accrual, 68 Fed. Reg. 17,277 (Apr. 9, 2003) (codified at 26 C.F.R. pts. 1, 54 & 602).  In fact, the IRS "was given primary jurisdiction and rule-making authority over ERISA's funding, participation, benefit accrual and vesting provisions." *Esden*, 229 F.3d at 157 n.2.  Both the IRS regulations and Revenue Ruling 2008-7 contain an example of a defined benefit plan tested under the fractional rule where the plan's benefit formula takes into account more than ten years of employment.  *See* 26 C.F.R. § 1.411(b)-1(b)(3)(iii)(Ex. 2); Rev. Rul. 2008-7, 2008-7 I.R.B. 419; *see also* I.R.S. Notice 96-8, 1996-1 C.B.

359 (Jan. 18, 1996) (stating that cash balance plans may comply by utilizing any one of the three minimum accrual tests). Thus, the district court erred in concluding that application of the fractional test is *per se* illegal in the context of cash balance plans.

**B. Application of the Fractional Test to the Citibuilder Cash Balance Plan Does Not Violate ERISA's Minimum Benefit Accrual Rules**

The district court concluded that under ERISA, benefits must accrue in a way so that in any given year, the amount of accrued benefit complies with the fractional rule's minimum standards. Article 4.1(e) of the Citibuilder Plan calls for the compliance calculation to occur when benefits are paid out. If, on the determination date, the amount of accrued benefit does not meet the fractional test, Citigroup adds money to the account to bring it into compliance with the minimum accrual requirements. Plaintiffs argue that this amounts to impermissible backloading. The district court characterized Article 4.1(e) as "unorthodox," and agreed with Plaintiffs that it was a "novel end-run around ERISA's minimum accrual standards." *Citigroup I*, 470 F. Supp. 2d at 337-38. We disagree; the text of ERISA dictates

a different result.

The provision governing the fractional rule states that a defined benefit plan, which includes a cash balance plan, "satisfies the requirements of this paragraph if the accrued benefit to which any participant is entitled *upon his separation* from the service is not less than a fraction of the annual benefit commencing at normal retirement age to which he would be entitled under the plan as in effect on the date of his separation." 29 U.S.C. § 1054(b)(1)(C) (emphasis added). Thus, by its own language, the fractional rule indicates that the relevant calculations are to be made at the time of separation.

The statute's plain language is in accord with the purpose of the minimum benefit accrual rules. Minimum benefit accrual rules under ERISA are designed to prevent participants who leave their employment before normal retirement age from receiving benefits that are disproportionately low relative to benefits they would have received if they had continued to work until normal retirement age. *See, e.g.*, *Langman*, 328 F.3d at 71; *Hurlic v. S. Cal. Gas Co.*, 539 F.3d 1024, 1033 (9th Cir. 2008).

27

The fractional test employed by Article 4.1(e) accomplishes this statutory objective by guaranteeing departing employees a benefit proportional (based upon years of service) to the benefit they would have received had they worked until normal retirement age. Under this test, adjustments are made to departure-time benefits to ensure that the participant is not penalized for leaving prior to normal retirement age. The rate of benefit accrual during a participant's employment is unimportant under this test, as long as proportional benefits are paid at the time of departure.

Revenue Ruling 2008-7 is instructive in the case at bar; it provides an example in which it first tests the plan using the 133 1/3 percent method and finds it satisfied for some, but not for all, participants. Rev. Rul. 2008-7. The example provided by the Revenue Ruling then applies the fractional rule to those participants for whom the plan did not satisfy the 133 1/3 test. *Id.* The Ruling specifically states that this is "not a classification that is structured to evade the accrued benefit requirements of § 411(b)(1)(A), (B), and (C) or § 1.411(b)-1." *Id.* Again, this court has

noted that "[r]evenue rulings issued by the I.R.S. are entitled to great deference, and have been said to have the force of legal precedent unless unreasonable or inconsistent with the provisions of the Internal Revenue Code." *Gillespie v. United States*, 23 F.3d 36, 39 (2d Cir. 1994) (quotation marks omitted). Here, the Revenue Ruling provides a reasonable interpretation of the statutory language. Therefore, we hold that Article 4.1(e)'s application of the fractional test at the time of separation from employment is proper, and that it achieves the purposes of ERISA's minimum benefit accrual rules.

### C. Citigroup Complied with ERISA's § 204(h) Notice Requirements

In its original opinion, the district court incorrectly reasoned that because the notices given by Citigroup "omitted any mention of the benefit formula's unorthodox approach to calculating benefits and monitoring accrual rates," and because the court ultimately concluded that the formula violated ERISA, "defendants' failure to either include or summarize Article 4.1(e) in the notices violated § 204(h)." *Citigroup I*, 470 F. Supp. 2d at 339. Essentially, the district court converted a perceived

29

substantive defect in the Plan into a basis for finding that the notice given was defective.  The district court recognized this error and attempted to cure it in its Memorandum Opinion and Order of April 4, 2007.  The court suggested "that had the notices merely identified the Plan's novel compliance mechanism," and presumably alerted the participants to the existence of Article 4.1(e), they would have been sufficient.  *Citigroup II*, 2007 WL 1074912, at *4.  But, because the notice did not provide participants with this information, the lower court still found that it failed to comply with ERISA § 204(h).  *Id.*  We disagree with both of the district court's formulations of ERISA's § 204(h) notice requirements, and find that the Citibuilder Plan Administrator complied with ERISA § 204(h).

As an initial matter, we reject Citigroup's argument that Plaintiffs lack standing to maintain a notice claim under § 204(h).  The cases Citigroup cites for this contention are inapposite; they discuss ability to maintain a claim pertaining to the statutory requirement to provide a Summary Plan Description ("SPD").  *See, e.g.*, *Weinreb v. Hosp. for Joint Diseases Orthopaedic Inst.*, 404 F.3d 167,

30

170 (2d Cir. 2005) (citing 29 U.S.C. §§ 1021(a), 1022(a)-(b), and 1024(b)). ERISA specifically sets out the information that must be contained in a SPD. 29 U.S.C. § 1022(b). "Among other things, [the] SPD must set out the 'circumstances which may result in disqualification, ineligibility, or denial or loss of benefits.'" *Wilkins v. Mason Tenders Dist. Council Pension Fund*, 445 F.3d 572, 580-81 (2d Cir. 2006) (quoting 29 U.S.C. § 1022(b)). This circuit has held that to prevail on a claim alleging that a SPD provided deficient notice, a plaintiff must show that he or she was "likely to have been harmed," or prejudiced. *Burke v. Kodak Ret. Income Plan*, 336 F.3d 103, 113 (2d Cir. 2003). To apply this "likely prejudice" standard in this case would be to conflate the requirements for bringing a claim challenging the sufficiency of a SPD under 29 U.S.C. § 1024(b) with those governing the provision of notice under 29 U.S.C. § 1054(h). *See Burke*, 336 F.3d at 113-14.

Notice of an amendment to a pension plan "need not contain an exact quotation of the text of the amendment, but may contain 'a summary of the amendment . . . if the summary is written in a manner calculated to be understood by the

31

average plan participant and contains the effective date.'" *Register*, 477 F.3d at 72 (quoting *Scott v. Admin. Comm. of the Allstate Agents Pension Plan*, 113 F.3d 1193, 1200 (11th Cir. 1997) (quoting 26 C.F.R. § 1411(d)-6T (1996))).[8] The notices distributed by Citigroup to all Plan participants properly provided a general summary of how the cash balance plan would function. *See Osberg v. Footlocker, Inc. & Footlocker Ret. Plan*, – F. Supp. 2d –, No. 07-cv-1358 (DAB), 2009 WL 2971834, at *9 (S.D.N.Y. Sept. 16, 2009) (discussing applicable version of ERISA § 204 and concluding that it "required the disclosure of only the amendment and its effective date, and did not seek to regulate the content of the communication any further").

ERISA does not require that notice pursuant to § 204(h) include a description of how the plan will comply with minimum benefit accrual rules. The Citigroup 1999 and 2001

---

[8] Congress amended ERISA in 2002 to provide that an amendment must "be written in a manner calculated to be understood by the average plan participant and shall provide sufficient information . . . to allow applicable individuals to understand the effect of the plan amendment." 29 U.S.C. § 1054(h)(2). We express no view on whether notice given by Citigroup would satisfy current law. Rather, we analyze the law in effect at the time relevant to Plaintiffs' challenge.

Notices properly alerted Plan participants that the amendments could result in a reduction in rates of benefit accrual. The Notices also made disclosures regarding the Benefit Credit formula and Plan interest rate, which permitted participants to compare this formula to their prior benefits formula. Section 204(h) only requires notice of plan amendments that "provide for a significant reduction in the rate of future benefit accrual." 29 U.S.C. 1054(h). Article 4.1(e) does not, in and of itself, reduce participants' benefits. Rather, it increases benefits when necessary to ensure compliance with ERISA's minimum accrual rules. The participants had proper notice that the conversion to a cash balance plan could have the effect of a reduction of rates of benefit accrual. The 1999 and 2001 Notices complied with the requirements of ERISA § 204(h).

**IV. CONCLUSION**

Based on the foregoing analysis, the district court's order of December 11, 2006, granting partial summary judgment to Plaintiffs, is hereby REVERSED and the complaint is DISMISSED.

33